Filed 8/11/21  P. v. Golden CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>CURTIS LEE GOLDEN,<br><br>      Defendant and Appellant. | C089397<br><br>(Super. Ct. No. STKCRFDV20170001145) |

Defendant Curtis Lee Golden pleaded no contest to one count of forcible oral copulation and one count of dissuading a witness from testifying.  After sentencing defendant, the trial court ordered him to pay $2,000 in victim restitution.  On appeal, defendant challenges the court's restitution order, arguing:  (1) there was no causal connection between his offenses of conviction and the victim's loss; and (2) the court violated his constitutional rights in failing to conduct a hearing on his ability to pay before imposing a victim restitution order.  We affirm the judgment.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

Defendant beat and strangled the victim and forced her to orally copulate him. After he was arrested and held in jail, he made several phone calls to the victim asking her not to testify against him in this case. He was charged in count 1 with forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)(A)) (statutory section references that follow are to the Penal Code); in count 2 with corporal injury to a cohabitant (§ 273.5, subd. (a)); in count 3 with immoral acts in the presence of a minor (§ 273g); in count 4 with cruelty to a child by inflicting injury (§ 273a, subd. (b)), in count 5 with dissuading a witness from testifying (§ 136.1, subd. (a)(1)); in count 6 with dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2)); and in counts 7 through 11 with contempt of court (§ 166, subd. (c)(1)). It was alleged that defendant had served a prior prison term within the meaning of section 667.5, subdivision (b).

As part of a negotiated plea agreement, defendant pleaded no contest to counts 1 and 5 in exchange for the dismissal of the remaining counts and allegations. Pursuant to the parties' agreement, the trial court sentenced defendant to an aggregate determinate term of three years eight months, based on the lower term of three years on count 1 and eight months (one-third the midterm) on count 5. The trial court ordered victim restitution in an amount to be determined and retained jurisdiction for that purpose.

After sentencing, the prosecution filed a brief requesting $2,000 in victim restitution to the Victim Compensation Program (VCP) for relocation expenses for the victim. The brief explained that relocation of the victim was necessary due to defendant's violent conduct against her. The prosecution also submitted documentation from the Victim Compensation Board (VCB) regarding the relocation expenses paid on behalf of the victim. According to the "Law Enforcement Relocation Verification Form," it was necessary for the victim to relocate for personal safety. The form explained: "Even after Defendant was incarcerated for the current brutal offense, involving repeated

strangulation and forcible oral copulation, Defendant refused to obey the Criminal Protective Order and repeatedly called Victim from the jail, trying to dissuade her from testifying in this case.  The Defendant also made efforts from jail to get his family members to harass and intimidate the Victim to stop her from testifying.  There is a continuing danger of retaliation by the Defendant, and Victim's safety continues to be at risk."

Defendant filed a motion to continue the restitution hearing because the defense had been unable to serve the victim with a subpoena following her relocation.  According to the motion and a declaration by defense counsel, the victim had informed the defense that she moved because her landlord threatened to evict her as a result of the incident with defendant.

On April 15, 2019, the court held a restitution hearing.  The victim failed to appear for the hearing despite personal service.  Defense counsel submitted written statements by his investigator, which allegedly reflected that the victim had told the investigator she was evicted by her landlord because of the "drama" caused by the underlying incident, not because she was afraid of appellant.  The first investigator report summarized the victim's statement as follows:  "[The victim] stated she informed the property manager that [defendant] didn't live with her.  [The victim and defendant] were involved in a prior altercation in which the manager had given her a verbal warning.  During this previous incident the police responded to the residence.  [The victim] stated her and the property manager had a discussion regarding the prior incident.  The property manager never said he didn't want [defendant] to come over to her residence anymore.  [¶]  The property manager was tired of the 'drama' that was happening at the complex.  . . . [The victim] believed the property manager was using these incidents to force her out."  The second investigator report summarized the victim's statement as follows:  "[The victim] stated due to the incident that occurred with [defendant], she was pending eviction from her place of residence.  The rental manager advised her to move before they began the

eviction process. [The victim] chose to move because she didn't want an eviction on her credit report. She couldn't afford to move and received assistance from The Office of Victims of Violent Crimes." The final investigator report noted that the victim stated defendant was not living with her at the residence at that time of the offenses and was not on her lease.

The prosecutor argued that the documents submitted by the defense supported, and did not rebut, the presumption in section 1202.4, subdivision (f)(4)(A), that the amount of assistance provided to the victim is the direct result of defendant's criminal conduct. In the prosecutor's view, the victim had confirmed that the reason she had to move from her residence was due to defendant's domestic violence against her. Defense counsel argued that relocation expenses are only supposed to be included in a victim restitution order if the victim relocated due to a fear of the defendant or out of need for their emotional well-being, and the victim had relocated because of the actions of her landlord. According to defense counsel, there was "a break in the chain of proximate cause" because of the landlord's actions. Defense counsel asserted that under Code of Civil Procedure section 1161.3, a landlord shall not terminate the tenancy of a tenant based on the acts of domestic violence by someone else in the household. The court stated that it had considered the documents that had been submitted and the arguments of counsel, and the court ordered victim restitution in the amount of $2,000.

DISCUSSION

I

*Substantial Evidence Supports Victim Restitution Order*

Defendant contends that the trial court erred in ordering defendant to pay victim restitution for the victim's moving expenses because the losses incurred by the victim were the result of unlawful actions by a third party, not defendant's conduct.

4

The California Constitution instructs, "Restitution shall be ordered from the convicted wrongdoer in every case . . . in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Section 1202.4, subdivision (f) implements this requirement, providing: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." In accordance with this mandate, "[a] victim's restitution right is to be broadly and liberally construed." (*People v. Mearns* (2002) 97 Cal.App.4th 493, 500.) We review the trial court's restitution order for an abuse of discretion. (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761.) The court's factual findings must be supported by substantial evidence. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) " 'Substantial evidence means such evidence as a reasonable fact trier might accept as adequate to support a conclusion; evidence which has ponderable legal significance, which is reasonable in nature, credible and of solid value.' " (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1663.)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim. [Citations.]' [Citation.]" (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) A defendant's criminal conduct must be the proximate cause of the economic loss. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396.) In determining whether the defendant's conduct was the proximate cause of the loss, the court applies the "substantial factor"

5

test. (*Ibid.*) Under this test, the defendant's conduct is the proximate cause of the loss if the defendant's conduct was a substantial factor in bringing about the loss. (*Ibid.*) Put simply, the test is whether the victim would have incurred losses had the defendant committed no crime. (*Id.* at p. 1397.) The test is a broad one and requires only that the contribution of the defendant's conduct be more than negligible or theoretical. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321.)

Here, the prosecution presented evidence, on behalf of the victim, that the VCB paid $2,000 in relocation expenses that law enforcement verified was necessary for the victim's personal safety. The "Law Enforcement Relocation Verification Form" specifically stated that it was "necessary for the victim to relocate for personal safety" and that "there is a continuing danger of retaliation for Victim's cooperation with prosecution." It further detailed that defendant had "refused to obey the Criminal Protective Order and repeatedly called Victim from the jail, trying to dissuade her from testifying in this case" and "made efforts from jail to get his family members to harass and intimidate the Victim to stop her from testifying."

Conversely, the defense presented reports from a defense investigator alleging that the victim later claimed she relocated because she was going to be evicted by her landlord due to the "drama" caused by defendant. Without additional corroborating evidence supporting the defense investigator's reports, the court was thus tasked with weighing the credibility of the victim's purported statements for the Law Enforcement Verification Form against the victim's purported statements to the defense investigator. Notably, the victim did not deny to the defense investigator that she had moved because of a threat to her personal safety. It is possible that both of the victim's purported statements about her reasons for moving were true. We will not reweigh or reinterpret the evidence in this case, where the victim did not testify herself and defendant's evidence does not necessarily rebut the prosecution's prima facie case. (*People v.*

*Millard, supra*, 175 Cal.App.4th at p. 26.)  Accordingly, we conclude there was substantial evidence to support the court's victim restitution order.

II

*Applicability of Dueñas to Victim Restitution Order*

Defendant argues that, pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), we should remand this case to the trial court for a determination on defendant's ability to pay the $2,000 in victim restitution imposed under section 1202.4, subdivision (f).

The *Dueñas* court held that due process of law requires a trial court to determine a defendant's "present ability to pay" before imposing court security assessments, criminal conviction assessments, and section 1202.4, subdivision (b) restitution fines.  (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1169-1172.)  As defendant concedes in his opening brief, he failed to argue he was unable to pay the assessed amounts during the hearing on victim restitution and did not object to the imposition of victim restitution based on his purported inability to pay.  Under ordinary rules of appellate procedure, defendant's challenge has been forfeited.  (See, e.g., *People v. Nelson* (2011) 51 Cal.4th 198, 227 [failure to object to restitution fine on grounds of ability to pay forfeits challenge].)  The constitutional nature of defendant's claim does not justify a deviation from that rule. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 859 [stating that no "core autonomy interests or constitutional rights are implicated by the waiver of a judicial hearing on a defendant's ability to pay"].)  The opinion in *Dueñas, supra*, 30 Cal.App.5th 1157 was issued on January 8, 2019, well before the April 15, 2019 victim restitution hearing. Defendant forfeited his appellate challenge based on the ability to pay issue because he failed to raise it in the trial court.

Even if defendant had not forfeited the issue, we conclude that *Dueñas* does not apply to victim restitution under section 1202.4, subdivision (f).  *Dueñas* addressed restitution fines under section 1202.4, subdivision (b), which are paid to the court, not

7

direct restitution to the victim. "Section 1202.4, subdivision (f) provides for a direct restitution order 'in every case in which a victim has suffered economic loss as a result of the defendant's conduct.' The order is to be for an amount 'sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct.' " (*People v. Brasure* (2008) 42 Cal.4th 1037, 1074-1075; accord, *Walker v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 651, 656 [" 'Restitution is constitutionally and statutorily mandated in California' "].)

Here, the court ordered restitution be paid to the VCB pursuant to section 1202.4, subdivision (f)(4), which applies where a victim has received assistance from the VCB. Section 1202.4, subdivision (g) specifically provides that "[a] defendant's inability to pay shall not be a consideration in determining the amount of a restitution order." As this court has previously observed, "The principles articulated in *Dueñas* have not been extended to a victim restitution payment under section 1202.4, subdivision (f)." (*People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 859; accord, *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338 ["*Dueñas* does not apply to victim restitution under section 1202.4, subdivision (f)"]; *People v. Evans* (2019) 39 Cal.App.5th 771, 777 ["Based on the significant differences in purpose and effect between victim restitution and the moneys at issue in *Dueñas*, we decline to extend the rule of *Dueñas* to victim restitution"].)

There was no error.

DISPOSITION

The judgment is affirmed.

_____

HULL, J.

We concur:

_____

BLEASE, Acting P. J.

_____

DUARTE, J.

9